UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LORI MARIE FRANKLIN                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:16-CV-P182-GNS

GREG FISHER et al.                                                    DEFENDANTS

## MEMORANDUM OPINION

Plaintiff, Lori Marie Franklin, filed a *pro se* complaint on this Court's form for prisoners bringing a civil-rights suit pursuant to 42 U.S.C. § 1983.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, the action will be dismissed.

## I. SUMMARY OF CLAIMS

Plaintiff is a convicted prisoner, currently incarcerated at the Kentucky Correctional Institution for Women.  She names as Defendants in their official capacities Louisville Metro Police Chief Steve Conrad; Louisville Metro Police Department Unit Commander Matthew Meagher; Louisville Metro Acting Director Sherri Toohey-Taylor; and Jefferson County Jailer Mark Bolton.  She names as a Defendant in her individual and official capacities Louisville Metro homicide detective Leigh Whelan-Maroni.  She also names the following Defendants in the caption of the complaint without identifying in what capacity she is suing them:  Louisville Mayor Greg Fisher, Carolyn Miller-Cooper, and Kellie Watson.  Her allegations primarily center on events in 2003-2004, specifically her arrest, subsequent pretrial detention at the Louisville Metro Detention Center, and her conviction for sex crimes, including a sex offense involving a minor, which resulted in a 40-year term of imprisonment.

Plaintiff alleges that during her pretrial detention she spent 378 days in a unit that housed the mentally ill and disciplinary inmates "for no reason." She alleges that being kept in solitary confinement for 378 days violated her Eighth Amendment rights. She asserts that the "dehumanizing effect of segregation caused [her] anxiety, panic, paranoia, hallucinations . . . ."

Plaintiff alleges that in 2013 she "discovered evidence of proof of innocence buried in her 248 pages of discovery." The evidence which she claims proves her innocence is a photograph of her former apartment, the scene of the crime. She alleges that the photograph is different from the one shown at her 2004 trial. Plaintiff argues that the photograph proves "Detective Whelan-Maroni maliciously arrested Franklin for sex crimes at that apartment against L.A. [the victim] with prior knowledge that [Plaintiff] could not even be placed at the allege[d] crime scene on the date that L.A. had given during her forensic interview or during her testimony at [Plaintiff's] 2004 trial." She asserts that "it was a malicious arrest, due to the fact that L.A. was the niece of a city official." Plaintiff further asserts that in 2013 she also discovered that a tape recording of Plaintiff and a witness, which was presented to the jury, was obtained illegally.

Plaintiff alleges that Defendant Detective Whelan-Maroni planned the hiding of the evidence of Plaintiff's innocence. She further alleges that Defendant Conrad's "decision to 'cover up' the police misconduct abuse of power and false discrimination" violated her constitutional rights.

Plaintiff states that after "discovering" this information, she filed a complaint with the City of Louisville's Ethics Commission. She states that by letter dated November 17, 2014, the Ethics Commission rejected her complaint based on the statute of limitations. Elsewhere she asserts that in 2013, when she "became aware of the police misconduct," she "began exhausting all possible administrative remedies, which officially concluded in August of 2015 [w]hen the

Louisville Police Merit Board refused to render services to [her] as any other citizen is entitled to."

Plaintiff alleges that on March 7, 2013, two members of the Professional Standards Unit came to the prison, took her sworn tape-recorded affidavit, and had her identify Defendant Whelan-Maroni.  She states that she was told "that there would be an investigation and [she] would receive the results."  However, she states that in April 2013, she received a letter from Defendant Conrad "refusing to investigate."  She alleges that Defendant Conrad abused his authority by closing the case without investigating and talking to witnesses.

Plaintiff alleges that she waited to be transported on October 30, 2013, to the police misconduct hearing, apparently in conjunction with an appeal of Defendant Conrad's refusal to investigate.  However, she was not taken to a hearing and did not receive the results of the hearing until August 2015.

Plaintiff asserts that Defendant Miller-Cooper, executive director of the Human Relations Commission, is "negligence of supervisory liability" because it was her responsibility to make sure that the ombudsman for the City of Louisville upheld Plaintiff's First Amendment right "to address her grievance, to speech in front of the Police merit Board and receive their decision in a timely matter as any other citizen."  Plaintiff alleges that Kelli Watson, Director of Louisville's Department of Human Resources, "was involved in a civil rights conspiracy" against Plaintiff. Plaintiff asserts that in February 2014 she filed a complaint against L.A.'s uncle with the City of Louisville's Ethics Commission alleging that L.A.'s family received "unwarranted privileges" during the 2003 investigation of Plaintiff.  She alleges in return she received two "suspicious" letters which only had Mayor Fisher's name on it, with no signature and no date.  She claims it was unethical for the Ethics Commission not to forward her complaint to law enforcement.

3

Plaintiff alleges that the Department of Human Resources took part in the conspiracy to cover up police misconduct.  As support for this claim, she alleges that it engaged in the same pattern of conduct and has the same address as the Louisville Police Merit Board.

Plaintiff alleges that there is no statute of limitation on filing a police misconduct complaint and that she filed complaints with seven entities under Defendant Fisher's control and they all took part in the civil conspiracy against her because they all engaged in the same pattern of conduct not to render services to Plaintiff, not to have Plaintiff's police-misconduct allegations investigated, and to continue to hold Plaintiff "in false imprisonment."

Plaintiff asserts that in August 2015, she realized that she had suffered actual damage from the refusal of the Louisville Police Merit Board to "render services" when she received a letter dated August 3, 2015, from Defendant Toohey-Taylor.  According to Plaintiff, she cannot establish a valid state-court, post-conviction claim of new evidence or obtain a state-court evidentiary hearing without a new police investigation.  She claims that the Police Merit Board has a duty of "enforcement of KRS 67C.321 complaints" and that it failed "to render services" by failing to ensure that she had her ten minutes in which to address the Board.  She claims that the Police Merit Board violated her First Amendment right to redress a grievance and that the Board discriminated against her because she is a prisoner.

As relief, Plaintiff requests monetary and punitive damages and to have Defendant Whelan-Maroni investigated for police misconduct, abuse of power, and false imprisonment.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions.  *Wilson v. Garcia*, 471 U.S. 261, 275-280 (1985).  Thus, in Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1)(a).  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).  "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Id.* at 183.  Though the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint.  *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

Here, Plaintiff states that she did not "discover" evidence until 2013, more than one year before she filed her complaint in this action.[1]  However, it appears that Plaintiff believes that her pursuit of what she calls administrative remedies to various city entities since 2013, such as the Professional Standards Unit, tolled the statute of limitations because it was a prerequisite to filing suit.  However, pursuit of municipal remedies does not toll the statute of limitations.

Plaintiff, as a prisoner suing governmental entities and officials, is proceeding under the Prison Litigation Reform Act (PLRA).  The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.A § 1997e(a).  The statute of limitations is tolled for the period of time required to exhaust such administrative remedies as available.  *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).  However, the PLRA only requires exhaustion of administrative remedies provided by the prison administration.  *Clay v. Parker*, No. 11-1075-JDT-EGB, 2013 WL 4056338, at *2-3 (W.D. Tenn. Aug. 12, 2013) ("Congress intended for 'administrative remedies as are available' to indicate administrative remedies that are within the prison to alleviate the federal court system.").  Thus, pursuing remedies "taken outside of the prison grievance process . . . is not considered an 'administrative remedy.'"  *Id.* at *3; *see also Howard v. Rea*, 111 F. App'x 419, 421 (6th Cir. 2004) (court rejected prisoner's argument that his cause of action did not accrue until he was informed by the Tennessee Claims

---

[1] The Court assumes without deciding for purposes of this Memorandum Opinion that the one-year statute of limitations period began running when Plaintiff "discovered" the evidence in 2013.  In actuality, it is highly doubtful that 2013 is when the one-year period began to run.  When a claim for relief accrues is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).  "[I]n this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred."  *Id.* According to the complaint, Plaintiff "discovered" evidence of her innocence while going through papers in her possession.  Although, Plaintiff claims that because of the deleterious effects of her pretrial detention she was not able to meaningfully monitor her trial in 2004, she does not explain why during the ten years or so between her trial and 2013 she was not able to "discover" the evidence in question.

6

Commission that his rights were violated or that the statute of limitations should be equitably tolled because he believed he had to exhaust state remedies).  Therefore, Plaintiff's pursuit of remedies with various Louisville Metro entities since "discovering" evidence in 2013 did not serve to toll the statute of limitations.

According to the complaint, Plaintiff put the complaint in the prison mail system on March 23, 2016.  Under the mailbox rule, the document is deemed filed when presented to prison officials for mailing.  *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).  The only allegation in the complaint which occurred within one year of that date, *i.e.*, between March 23, 2015, and March 23, 2016, is Plaintiff's receipt of the August 3, 2015, letter from the Police Merit Board.  Thus, all of Plaintiff's other claims must be dismissed as frivolous because they are time-barred.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

The August 3, 2015, letter states that the Police Merit Board had received an opinion from counsel that it has no jurisdiction to take action with regard to her complaint about "'the Louisville Metro Police Department's policy of not investigating all complaints against police officers equally per KRS 15.520.'"  That letter explains that the Board does not have the jurisdiction or authority to review "Police Department disciplinary policy except with respect to the limited issue of whether a particular officer was disciplined appropriately by the Chief of Police."  That letter also explains that appeals to the Board must be brought within 30 days. That letter states:  "In April of 2014 your complaints against Det. Whelan-Maroni were considered and it was determined that the matter involved a verdict against you after a Jefferson Circuit Court trial and in a matter which the Board was in no position to review or second guess – or even had jurisdiction to do."

7

Even if the Court considers allegations related to this letter to not be barred by the statute of limitations, Plaintiff cannot premise her § 1983 complaint on this communication from the Police Merit Board. The statute that Plaintiff complained was not being applied equally to her, § 15.520, provides due process protections for police officers not citizens. *Youngblood v. City of Paducah*, No. 5:10-CV-00206-R, 2012 WL 529871, at *6 (W.D. Ky. Feb. 17, 2012) (noting that Ky. Rev. Stat. § 15.520 provides procedural due process protection for law enforcement officers and, therefore, private citizens could not sustain a lawsuit under this statute); *Pearce v. Whitenack*, 440 S.W.3d 392, 402 (Ky. Ct. App. 2014) (dissent noted that Ky. Rev. Stat. § 15.520 *et seq.* is "a statute expressly intended to guarantee due process rights for police officers of local governments in Kentucky").

Further, even if Plaintiff was protected by this or another state statute, violations of state law do not support a § 1983 claim. It is only when a violation of state law results in an infringement of a federally protected right that a cause of action can be maintained under § 1983. *Paul v. Davis*, 424 U.S. 693, 700 (1976); *see also Michael v. Ghee*, 498 F.3d 372, 375 (6th Cir. 2007).

Additionally, to the extent Plaintiff claims that there is an ongoing civil conspiracy up to and including the letter sent in August 2015, her allegations are entirely too conclusory to support such a claim. "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 951411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996); *see also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("It is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

8

Finally, to the extent that Plaintiff's claims are not time-barred, Plaintiff's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a state prisoner cannot maintain a § 1983 claim against a prosecutor and a police investigator for misconduct during the prisoner's criminal prosecution.  The Supreme Court determined that such a claim challenged the legality of the conviction and was therefore improperly brought as a § 1983 claim.  "The Court held that when a plaintiff brings such a claim he or she must first demonstrate that his or her conviction had been invalidated." *Jackson-El v. Winsor*, 986 F. Supp. 440, 444 (E.D. Mich. 1997).  Because Plaintiff's claims "imply the invalidity of [her] conviction, which has not been overturned through other processes," her claims must be dismissed.  *Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002).  *See also Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003) (holding that allegations under § 1983 of conspiracy by the defendants to revoke the plaintiff's parole were not cognizable under *Heck*); *Shaw v. Mangione*, 27 F. App'x 407, 408 (6th Cir. 2001) (where plaintiff "had alleged a conspiracy to wrongfully convict him, part of which included the defendants' alleged action rendering him unable to participate in his defense at trial," but plaintiff's conviction had not been reversed or vacated, his § 1983 claim had not accrued); *Bolden v. Holmes*, No. 2:09-CV-11020, 2009 WL 937683, at *2 (E.D. Mich. Apr. 6, 2009) (where plaintiff's illegal arrest, false testimony, and conspiracy claims went to the propriety of the parole revocation itself, such that ruling on those claims in Plaintiff's favor would necessarily demonstrate the invalidity of his confinement, such claims were barred by *Heck*).

## III. <u>CONCLUSION</u>

For the foregoing reasons, by separate Order the Court will dismiss the instant action.

Date:   August 29, 2016

**Greg N. Stivers, Judge**
**United States District Court**

cc:     Plaintiff, *pro se*
        Defendants
4416.009

10